**JUDGE FURMAN**

# 13 CIV 6418

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
CAROTRANS INTERNATIONAL INC., also known as :
CAROTRANS INTERNATIONAL IMPORTS,

                  Plaintiff,

v.

TAZMANIAN FREIGHT FORWARDING, INC. and
DOLLAMUR L.P. d/b/a/ DOLLAMUR SPORTS
SURFACES,

                  Defendants.
------------------------------------- x



## COMPLAINT

Plaintiff, CAROTRANS INTERNATIONAL INC., also known as CAROTRANS INTERNATIONAL IMPORTS (hereinafter "CAROTRANS" or "Carrier"), through its undersigned counsel, files this Complaint against Defendants TAZMANIAN FREIGHT FORWARDING, INC. (hereinafter "TAZMANIAN" or "Forwarding Agent"), and DOLLAMUR L.P., doing business as DOLLAMUR SPORTS SURFACES (hereinafter "DOLLAMUR" or "Exporter of Record") and alleges upon information and belief as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1333 and Rule 9(h) of the Federal Rules of Civil Procedure.

2. Venue is proper in the United States District Court for the Southern District of New York because the bill of lading contracts at issue make this Court the exclusive forum for disputes arising thereunder.

## FACTUAL BACKGROUND

3. This complaint for damages arises from TAZMANIAN's and DOLLAMUR's breach of CAROTRANS' Bill of Lading contracts due to their failure to remit payment for demurrage and other expenses accrued in relation to Bills of Lading Nos. FCLGUY1243001 and FCLBVT1243001.

## PARTIES

4. At all times hereinafter mentioned, CAROTRANS was and still is a corporation organized and existing pursuant to the laws of Delaware, with a principal office and place of business located at 100 Walnut Avenue, Ste. 202, Clark, New Jersey, 07066.

5. At all times hereinafter mentioned, Defendant TAZMANIAN was and still is a corporation organized and existing pursuant to the laws of Ohio, with a place of business located at 18500 Lee Road Suite I, Humble Texas 77338.

6. At all times hereinafter mentioned, Defendant DOLLAMUR, was and still is a limited partnership organized and existing pursuant to the laws of Delaware, with a principal office and place of business located at 4709 S. Edgewood Terrace, Fort Worth, Texas, 76119.

## STATEMENT OF FACTS

7. CAROTRANS is a global non-vessel-operating common carrier.

8. On or about November 2, 2012, CAROTRANS and DOLLAMUR, through its Forwarding Agent, TAZMANIAN, entered into a contract of carriage pursuant to which DOLLAMUR agreed to tender and CAROTRANS agreed to facilitate two containerized cargo shipments from DOLLAMUR's place of business in Fort Worth, Texas, to consignees in Guayaquil, Ecuador and in Buenaventura, Colombia.

9. Both containerized cargo shipments were to be exported via the Port of Houston, Texas and each of these shipments consisted of "20 Standard Dry Container SLAC" and "7 Roll of Athletic Mats."

10. The containerized cargo shipment to Guayaquil, Ecuador was memorialized in Bill of Lading No. FCLGUY1243001 and the containerized cargo shipment to Buenaventura, Colombia was memorialized in Bill of Lading No. FCLBVT1243001 (heretofore the "Bills of Lading"). True and correct copies of the Bills of Lading are attached hereto as Exhibits A and B, respectively.

11. CAROTRANS' Bills of Lading FCLGUY1243001 (Ecuador) and FCLBVT1243001 (Colombia), which memorialize the contracts of carriage, are subject to standard-form terms and conditions. These terms and conditions are provided electronically with the Bills of Lading that are tendered to the Forwarding Agent.

12. In addition, these standard-form terms and conditions are publicly available and published on CAROTRANS' website and are also available from CAROTRANS or any of its agents upon request. Annexed here as Exhibit C is a true and correct copy of CAROTRANS' standard terms and conditions applicable to the Bills of Lading and available on on CAROTRANS' website at https://ctishipping.carotrans.com/americas/.

13. The terms and conditions of CAROTRANS' standard-form Bill of Lading are also contained in CAROTRANS' tariff, as required by regulations promulgated by the Federal Maritime Commission, which is incorporated into Bills of Lading Nos. FCLGUY1243001 and FCLBVT1243001, issued by CAROTRANS to DOLLAMUR via TAZMANIAN.

14. TAZMANIAN is CAROTRANS' client, and acted as Forwarding Agent to DOLLAMUR for both of the subject transactions.

15. DOLLAMUR acted as "exporter of record" and U.S. Principal Party in Interest in connection with the two subject shipments. As such, DOLLAMUR identified and provided foreign consignees in Guayaquil, Ecuador and Buenaventura, Colombia for receipt of the goods—in each case, the "Buyer." In Guayaquil, Ecuador, DOLLAMUR identified "The Cage Gym" as Buyer. In Buenaventura, Colombia, DOLLAMUR identified "Omar Lopera Tamayo" as Buyer.

16. On or about November 18, 2012, the cargo subject to Bill of Lading No. FCLBVT1243001 (Exhibit B) arrived at and was discharged to the port of Buenaventura, Colombia and made available for pick-up in satisfaction of CAROTRANS' obligations under that Bill of Lading.

17. On November 23, 2012, CAROTRANS' Colombia port agent notified CAROTRANS that the Buyer had not claimed the goods. On November 26, 2012, CAROTRANS notified TAZMANIAN of this fact by e-mail, and TAZMANIAN responded that it had forwarded the notification to the shipper, DOLLAMUR. During the period from November 26, 2012 to June 5, 2013, CAROTRANS' Texas Branch Manager, Keith Morris, consistently followed up with TAZMANIAN regarding this problem.

18. On or about November 22, 2012, the cargo subject to Bill of Lading No. FCLGUY1243001 (Exhibit A) arrived at and was discharged to the port of Guayaquil, Ecuador and made available to pick-up in satisfaction of CAROTRANS' obligations under the Bill of Lading.

19. On January 8, 2013, CAROTRANS' carrier, Mediterranean Shipping Company (USA) Inc. ("MSC"), notified CAROTRANS that the Buyer had not claimed the goods, which CAROTRANS confirmed with its Ecuador port agent, that same day.

20. That same day, January 8, 2013, CAROTRANS informed TAZMANIAN that the Ecuador Buyer had not claimed the goods in B/L FCLGUY1243001. CAROTRANS also requested an update regarding B/L FCLBVT1243001 in the same e-mail correspondence. TAZMANIAN responded on January 8 that it had forwarded the notification to the Shipper, DOLLAMUR.

21. Mr. Morris consistently followed up with TAZMANIAN regarding the abandoned goods in FCLBVT1243001 and FCLGUY1243001 during the period from January 8 to June 5, 2013.

22. CAROTRANS' standard Terms and Conditions applicable to the dispute provide that the "Merchant" is liable to the "Carrier" for the payment of all "Charges." The "Merchant" is defined as the "shipper, consignee...holder of this Bill of Lading, owner of the cargo, or person entitled to the possession of the cargo *and* the servants and agents of any of these, all of whom shall be jointly and severally liable to the Carrier for the payment of all Charges." *See* Clause 1(g) of the Terms and Conditions (Exhibit C)(emphasis added). As shipper and owner of the cargo, DOLLAMUR is a merchant. As DOLLAMUR's agent, TAZMANIAN is also a Merchant.

23. The "Carrier" is defined as the Company named on "the face side hereof and on whose behalf the Bill of Lading was issued," which is CAROTRANS. *See* Clause 1(c) of the Terms and Conditions (Exhibit C).

24. "Charges" are defined as the "freight, deadfreight, demurrage and all expenses and money obligations incurred and payable by the Merchant." *See* Clause 1(d) of the Terms and Conditions (Exhibit C).

25. Clause 7 of the Terms and Conditions also states that "[t]he Merchant shall be liable for all loss or damage of any kind whatsoever, including but not limited to . . . demurrage before, during and after the Carriage or property (including but not limited to Containers) of the Carrier or any person or vessel (other than the Merchant) caused by the Merchant or acting on its behalf or for which the Merchant is otherwise responsible." *See* Clause 7(e) of the Terms and Conditions (Exhibit C).

26. Clause 7 sets forth that the Merchant shall be liable and shall indemnify the Carrier for all "demurrage on Containers and any payment, expense, fine, dues, duty tax, import, loss, damage, or detention sustained or incurred by or levied by the Carrier, Vessel . . ." and " . . . [f]rom any cause in connection with the Goods for which the Carrier is not responsible." *See* Clause 7(f) & (g) of the Terms and Conditions (Exhibit C).

27. Clause 16 of CAROTRANS' Terms and Conditions further provides as follows:

Clause 16. Carrier's Lien.

The carrier shall have a lien on the Goods, inclusive of any Container owned or leased by the Merchant, as well as on any Charges due any other person, and any documents relating thereto, which lien shall survive delivery, for all sums due under this contract or any other contract or undertaking to which the Merchant was party or otherwise involved, including, but not limited to, General Average contributions, salvage and the cost of recovering such sums, inclusive of attorney's fees. Such lien may be enforced by the Carrier by public or private sale at the expense of and without notice to the Merchant.

The Merchant agrees to defend, indemnify and hold the Carrier, any participating carrier, independent contractor, their agents and servants, harmless from and against all liability, loss, damage or expense which may be sustained or incurred by the Carrier relative to the above and the Merchant agrees to submit to the jurisdiction of any court, tribunal or other body before whom the Carrier may be brought, whether said proceeding is of a civil or criminal nature.

(Exhibit C.)

28. Since November 18 & 22, 2012, the respective dates of arrival of the subject cargo, Defendants' goods have not been claimed, collected or otherwise dealt with by the named Buyers.

29. After months of communications with TAZMANIAN in its role as Shipping Agent, CAROTRANS decided to communicate directly with DOLLAMUR regarding this situation. On June 5, 2013, CAROTRANS contacted DOLLAMUR via e-mail to schedule a meeting.

30. On June 7, 2013, CAROTRANS and DOLLAMUR had an in-person meeting during which CAROTRANS informed DOLLAMUR that the containerized cargo had not been cleared from the terminals in Ecuador and Colombia and had been accruing demurrage and other charges because the shipments could not be cleared through Customs in those countries without an in-country importer of record. CAROTRANS made clear to DOLLAMUR that, as Shipper, DOLLAMUR was responsible for these charges.

31. On June 18, 2013, CAROTRANS sent follow-up correspondence to DOLLAMUR and TAZMANIAN by e-mail which clearly stated that under its contract of carriage with CAROTRANS, DOLLAMUR was liable for all charges associated with its failure to clear the cargo and provided details about the stated charges at each of the ports.

32. The accrued demurrage, local charges and/or other charges incurred as a result of TAZMANIAN and DOLLAMUR's failure to arrange for delivery of the cargo is as follows: (a) Guayaquil, Ecuador (FCLGUY1243001) has accrued at least USD$17,200.00, and (b) Buenaventura, Colombia (FCLBVT1243001) has accrued at least USD$42,849.86, for a total of at least USD$60,049.86 as of the date of filing of the complaint, which amounts continue accruing.

## AS AND FOR A FIRST CAUSE OF ACTION
(Breach of Contract)

33. CAROTRANS repeats and realleges the allegations of paragraphs 1-32, above, as if fully set forth herein.

34. In breach of their obligations under the Bills of Lading, TAZMANIAN and DOLLAMUR failed to have the containers picked up and instead allowed them to remain at the terminals at the Ports of Guayaquil, Ecuador and Buenaventura, Colombia, respectively, from November 18 & 22, 2013 at least to the date of the filing of this complaint. During this period, they accrued demurrage, storage, local port charges, and/or other associated fees and charges.

35. The accrued demurrage, local charges and/or other charges incurred as a result of TAZMANIAN and DOLLAMUR's failure to arrange for delivery of the cargo is as follows: (a) Guayaquil, Ecuador (FCLGUY1243001) has accrued at least USD$17,200.00 as of the last invoice, and (b) Buenaventura, Colombia (FCLBVT1243001) has accrued at least USD$42,849.86 as of the last invoice, for a total of at least USD$60,049.86 as of the last invoice, which amounts continue accruing.

36. As the Shipping Agent and Shipper of the cargo, TAZMANIAN and DOLLAMUR are Merchants as defined under the Bill of Lading contracts. TAZMANIAN and DOLLAMUR are therefore both liable for all charges incurred by the cargo as a result of any delay in sale or payment for the cargo.

37. Despite due demand, defendants TAZMANIAN and DOLLAMUR have failed to effect payment of the charges due and owing to CAROTRANS.

38. CAROTRANS has complied with all conditions precedent required of it and makes this claim in its own right and/or as agent for any other party with an interest in the subject matter herein.

## AS AND FOR A SECOND CAUSE OF ACTION
(For Attorneys' Fees and Costs)

39. CAROTRANS repeats and realleges the allegations of paragraphs 1-38 above, as if fully set forth herein.

40. Clause 16 of the standard Terms and Conditions of the CAROTRANS Bills of Lading provides that CAROTRANS shall be entitled to recover its legal fees and expenses incurred in connection with this action. *See* Exhibit C.

41. TAZMANIAN and DOLLAMUR are liable for CAROTRANS' legal fees incurred in connection with this action, in addition to any costs and expenses at an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays:

A. that judgment be entered in favor of Plaintiff, CAROTRANS INTERNATIONAL INC., also known as CAROTRANS INTERNATIONAL IMPORTS, in the amount to be determined at trial but in no event less than USD$60,049.86 with interests, costs and disbursements of this action;

B. that in accordance with the governing contract of carriage, the Court award Plaintiff, CAROTRANS, its attorney fees and associated costs and expenses incurred in this matter; and

C.  that the Court award it such other, further and different relief as the Court may deem just and proper.

Dated:  New York, New York
        September 12, 2013

                                            VENABLE, LLP

                                            By: /s/ *signature*
                                            Brian C. Dunning
                                            Irene Ribeiro Gee
                                            1270 Avenue of the Americas, 24th Floor
                                            New York, New York 10020
                                            (212) 370-6269

                                            *Counsel for Plaintiff*
                                            *CaroTrans International, Inc.*

# EXHIBIT A

# CaroTrans

REMIT TO: CAROTRANS INTERNATIONAL, INC.  
100 WALNUT AVE., SUITE 202  
Clark, NJ 07066

PHONE: (732) 540-8100  
FAX: (732) 540-8123

Page 1 of 1

# BILL OF LADING

| SHIPPER/EXPORTER (COMPLETE NAME AND ADDRESS) | BOOKING NO. | | BILL OF LADING NO. |
|---|---|---|---|
| DOLLAMUR SPORT SURFACES 0001003<br>4709 S EDGEWOOD TERRACE<br><br>FORT WORTH, TX 76119<br>Phone: 800 720 7647    Fax: . | FCLGUY1243001 | DAL | FCLGUY1243001 |

**EXPORT REFERENCES**  
CUST REF #: TAZ-1182846

| CONSIGNEE NAME/ADDRESS(NOT NEGOTIABLE UNLESS CONSIGNED TO ORDER) | FORWARDING AGENT, F M C NO. |
|---|---|
| THE CAGE GYM SHOP 0001004<br>CDLA ADACE ENTRE LA CALLE<br>4TA Y LA B<br><br>GUAYAQUIL, | TAZMANIAN FREIGHT FORWARDING, INC    0000811<br>1065 TEXAN TRAIL, SUITE 150<br>GRAPEVINE, TX 76051    **<br>Phone: 817-329-4600    Fax:    817-251-4611 |

**POINT AND COUNTRY OF ORIGIN OF GOODS**

| NOTIFY PARTY(COMPLETE NAME AND ADDRESS) | FOR DELIVERY PLEASE APPLY TO: |
|---|---|
| SAME AS CONSIGNEE 0001004<br>JULIO ERICK MOLINA RODRIGUEZ<br>5934 239 7446 | INCA LINES DEL ECUADOR INCALINES    1103359<br>RUC 0992436980001 KENNEDY NORTE AV<br>MIGUEL H. ALCIVAR S/N MZ. 506 EDIF.<br>DEL NORTE TORRE A PISO 7 OF. 708<br>GUAYAQUIL,<br>Phone: 593-4-6027420    Fax:    593-4-6027424 |

| PRE-CARRIAGE BY: | PLACE OF RECEIPT BY PRE-CARRIER<br>FORT WORTH, TX | CONTAINER<br>MEDU6278563 | FILE #<br>785 | Seal Number<br>435261 |
|---|---|---|---|---|
| VESSEL<br>MSC KOREA/1242A | PORT OF LOADING<br>HOUSTON | LOADING PIER/TERMINAL | | |
| PORT OF DISCHARGE<br>GUAYAQUIL | PLACE OF DELIVERY BY ON CARRIER | NUMBER OF ORIGINALS<br>EXPRESS RELEASE | | |

**PARTICULARS FURNISHED BY SHIPPER**

| MARKS & NOS/CONTAINER NOS. | NO. OF PKGS. | DESCRIPTION OF PACKAGES AND GOODS | GROSS WEIGHT | MEASUREMENT |
|---|---|---|---|---|
| MEDU6278563<br>435261 | 1 | 20 STANDARD DRY CONTAINER SLAC<br><br>7 ROLL OF ATHLETIC MATS<br><br>HTS: 4016.91<br><br>FREIGHT PREPAID<br>EXPRESS RELEASE<br>AES: X20121022022687<br><br>**NON-NEGOTIABLE**<br>These commodities, technology, or software were exported from the United States in accordance with the export administration regulations. Diversion contrary to U.S. law prohibited. | 1,048.000 KG<br><br><br><br><br><br><br><br>2,310.421 LB<br>1,048.000 KG | |
| Total Number of Packages | 1 | | | |

The declared value of the GOODS is $  
If the MERCHANT enters the actual value of the GOODS and pays the applicable ad valorem rate, the CARRIER'S PACKAGE limitation will not apply.(See Clause 21 on the next page)

AES: X20121022022687

| CHARGES,INCLUDING FREIGHT | BASIS | RATE | PREPAID | COLLECT |
|---|---|---|---|---|
| OCEAN FREIGHT | L | 2,020.00 | 2,020.00 | |
| INLAND | L | 1,070.00 | 1,070.00 | |

THE RECEIPT, CUSTODY, CARRIAGE AND DELIVERY OF THE GOODS ARE SUBJECT TO THE TERMS APPEARING ON THE FACE AND BACK HEREOF AND TO CARRIER'S APPLICABLE TARIFF OR SERVICE AGREEMENT.

TOTAL $3,090.00

TOTAL

Where applicable law requires and not otherwise, one original BILL OF LADING must be surrendered, duly endorsed, in exchange for the GOODS or CONTAINER(S) or other PACKAGE(S), the others stand void. If a "Non-Negotiable" BILL OF LADING is issued, neither an original nor a copy need be surrendered in exchange for delivery unless applicable law so states.

**CaroTrans**  
**As Carrier**

By: _____

Receipt for Shipment Date: _____

Sail Date: 11/02/2012

# EXHIBIT B

| | | | | | |
|---|---|---|---|---|---|
| | | REMIT TO: CAROTRANS INTERNATIONAL, INC. 100 WALNUT AVE., SUITE 202 Clark, NJ 07066 | | PHONE: (732) 540-8100 FAX: (732) 540-8123 | Page 1 of 1 |

# CaroTrans
## BILL OF LADING

| SHIPPER/EXPORTER (COMPLETE NAME AND ADDRESS) | | BOOKING NO. | | BILL OF LADING NO. |
|---|---|---|---|---|
| DOLLAMUR SPORT SURFACES 4709 S EDGEWOOD TERRACE  FORT WORTH, TX 76119 Phone: 800 720 7647  Fax: | 0001003 | FCLBVT1243001 | DAL | FCLBVT1243001 |
| | | **EXPORT REFERENCES** CUST REF #: TAZ-1182473 | | |

| CONSIGNEE NAME/ADDRESS(NOT NEGOTIABLE UNLESS CONSIGNED TO ORDER) | | FORWARDING AGENT, F M C NO. | |
|---|---|---|---|
| OMAR LOPERA TAMAYO CRA 38A, #7-05 BARRIO EL TEMPLETE CALI COLOMBIA BUENAVENTURA, | 0001005 | TAZMANIAN FREIGHT FORWARDING, INC 1065 TEXAN TRAIL, SUITE 150 GRAPEVINE, TX 76051 Phone: 817-329-4600    Fax:    817-251-4611 | 0000811 ** |
| | | POINT AND COUNTRY OF ORIGIN OF GOODS | |

| NOTIFY PARTY(COMPLETE NAME AND ADDRESS) | | FOR DELIVERY PLEASE APPLY TO: | |
|---|---|---|---|
| SAME AS CONSIGNEE OMAR LOPERA TAMAYO 315 336 8614 | 0001005 | MAGNUM LOGISTICS S.A. NIT: 811.012.106-6 CALLE 64 NO. 5BN-146 OFICINA 107G, CENTRO EMPRESA. CALI COLOMBIA, Phone: (572)2-8014 14 | 1109699 |

| PRE-CARRIAGE BY: | PLACE OF RECEIPT BY PRE-CARRIER FORT WORTH TX | CONTAINER MSCU6299791 | FILE # 784 | Seal Number 435260 |
|---|---|---|---|---|
| VESSEL MSC KOREA/1242A | PORT OF LOADING HOUSTON | LOADING PIER/TERMINAL | | |
| PORT OF DISCHARGE BUENAVENTURA | PLACE OF DELIVERY BY ON CARRIER | NUMBER OF ORIGINALS EXPRESS RELEASE | | |

### PARTICULARS FURNISHED BY SHIPPER

| MARKS & NOS/CONTAINER NOS. | NO. OF PKGS. | DESCRIPTION OF PACKAGES AND GOODS | GROSS WEIGHT | MEASUREMENT |
|---|---|---|---|---|
| MSCU6299791 435260 | 1 | 20 STANDARD DRY CONTAINER SLAC  7 ROLLS OF ATHLETIC MATS  HTS: 4016.91  EXPRESS RELEASE FREIGHT PREPAID AES: X20121022016199 | 524.000 KG | |
| Total Number of Packages | 1 | **NON-NEGOTIABLE** These commodities, technology, or software were exported from the United States in accordance with the export administration regulations. Diversion contrary to U.S. law prohibited. | 1,155.210 LB 524.000 KG | |

The declared value of the GOODS is $
AES: X20121022016199
If the MERCHANT enters the actual value of the GOODS and pays the applicable ad valoram rate, the CARRIER'S PACKAGE limitation will not apply.(See Clause 21 on the next page)

| CHARGES,INCLUDING FREIGHT | BASIS | RATE | PREPAID | COLLECT |
|---|---|---|---|---|
| OCEAN FREIGHT INLAND | L L | 2,020.00 1,070.00 | 2,020.00 1,070.00 | |
| | | | TOTAL $3,090.00 | TOTAL |

THE RECEIPT, CUSTODY, CARRIAGE AND DELIVERY OF THE GOODS ARE SUBJECT TO THE TERMS APPEARING ON THE FACE AND BACK HEREOF AND TO CARRIER'S APPLICABLE TARIFF OR SERVICE AGREEMENT.

Where applicable law requires and not otherwise, one original BILL OF LADING must be surrended, duly endorsed, in exchange for the GOODS or CONTAINER(S) or other PACKAGE(S), the others stand void. If a "Non-Negotiable" BILL OF LADING is issued, neither an original nor a copy need be surrended in exchange for delivery unless applicable law so states.

CaroTrans As Carrier

By: _____

Receipt for Shipment Date: _____

Sail Date: 11/02/2012

# EXHIBIT C

RECEIVED FOR SHIPMENT from the MERCHANT in apparent good order and condition unless otherwise stated herein, the GOODS mentioned on the face of this Bill of Lading to be transported as provided herein, by anymode of transport for all or any part of the Carriage, SUBJECT TO ALL THE TERMS AND CONDITIONS appearing on the face and back hereof and in the CARRIER'S applicable Tariff(s) and/or Service Agreements, to which the Merchant agrees by accepting this Bill of Lading.

1. DEFINITIONS.
   a) "Bill of Lading" as used herein includes conventional bills of lading, as well as electronic, express and laser bills of lading, sea waybills and all like documents, howsoever generated, covering the Carriage of Goods hereunder, whether or not issued to the Merchant.
   b) "Carriage" means the whole or any part of the operations and services undertaken or performed by or on behalf of the Carrier with respect to the Goods.
   c) "Carrier" means the Company named on the face side hereof and on whose behalf this Bill of Lading was issued, whether acting as carrier or bailee.
   d) "Charges" means freight, deadfreight, demurrage and all expenses and money obligations incurred and payable by the Merchant.
   e) "Container" means any container (closed or open top), van, trailer, flatbed, transportable tank, railroad car, vehicle, flat, flatrack, pallet, skid, platform, cradle, sling-load or any other article of transport and any equipment associated or appurtenant thereto.
   f) "Goods" means the cargo received from the shipper and described on the face side hereof and any Container not supplied by or on behalf of the Carrier.
   g) "Merchant" means the shipper, consignee, receiver, holder of this Bill of Lading, owner of the cargo or person entitled to the possession of the cargo and the servants and agents of any of these, all of whom shall be jointly and severally liable to the Carrier for the payment of all Charges, and for the performance of the obligations of any of them under this Bill of Lading.
   h) "On Board" or similar words endorsed on this Bill of Lading means that in a Port to Port movement, the Goods have been loaded on board the Vessel or are in the custody of the actual ocean carrier and, in the event of intermodal transportation, if the originating carrier is an inland or coastal carrier, means that the Goods have been loaded on board rail cars or another mode of transport at the Place of Receipt and/or are in the custody of a Participating carrier and en route to the Port of Loading named on the reverse side.
   i) "Participating carrier" means any other carrier by water, land or air, performing any stage of the Carriage, including inland and coastal carriers, whether acting as sub-carrier, connecting carrier, substitute carrier or bailee.
   j) "Person" means an individual, a partnership, a body corporate or any other entity of whatsoever nature.
   k) "Vessel" means the ocean vessel named on the face side hereof, and any substitute vessel, feedership, barge, or other means of conveyance by water used in whole or in part by the Carrier to fulfill this contract.
2. CARRIER'S TARIFFS.
   The Goods carried hereunder are subject to all the terms and conditions of the Carrier's applicable tariff(s) and/or Service Agreements which, if required, are on file with a regulatory body whose rules govern all or a particular portion of the Carriage and said terms and conditions are hereby incorporated herein as part of the Terms and Conditions of this Bill of Lading. Copies of the relevant provisions of the applicable tariff(s) are obtainable from the Carrier or concerned regulatory body upon request. In the event of any conflict between the terms and conditions of such tariff(s) and the Terms and Conditions of this Bill of Lading, this Bill of Lading shall prevail.
3. WARRANTY/ACKNOWLEDGMENT.
   The Merchant warrants that in agreeing to the Terms and Conditions hereof, it is, or is the agent and has the authority of, the owner or person entitled to the possession of the Goods or any person who has a present or future interest in the Goods.
   The Merchant acknowledges that the Carrier is a non-vessel operating common carrier ("NVOCC"), and that it neither owns nor charters vessels, as a result of which the Carrier or any sub-carrier, connecting carrier or substitute carrier (which may be a NVOCC) will be required to contract with an actual ocean carrier to accomplish the Carriage contemplated by this Bill of Lading and does so as agent of the Merchant.
   The Merchant further acknowledges that by identifying the carrying Vessel on the face side hereof, it knows or can determine the name of the actual ocean carrier and the terms and conditions of the actual ocean carrier's bill of lading and applicable tariff(s) and agrees to be bound thereby.
4. RESPONSIBILITY.
   a) Except where the Carriage covered by this Bill of Lading is to or from a port or locality where there is in force a compulsorily applicable ordinance or statute of a nature similar to the International Convention for the Unification of Certain Rules Relating to Bills of Lading, dated at Brussels, August 25, 1924, the provisions of which cannot be departed from, and suit or other proceeding is instituted and litigated in such locality, this Bill of Lading shall have effect subject to the Carriage of Goods by Sea Act of the United States ("COGSA"), approved April 16, 1936, and nothing herein contained, unless otherwise stated, shall be deemed a surrender by the Carrier of any of its rights, immunities, exemptions, limitations or exonerations or an increase of any of its responsibilities or liabilities under COGSA or, as the case may be, such compulsorily applicable ordinances or statutes. The provisions of COGSA or such compulsorily applicable ordinances or statutes (except as otherwise specifically provided herein) shall govern before loading on and after discharge from the vessel and throughout the entire time the Goods or Containers or other packages are in the care, custody and/or control of the Carrier, Participating carriers or independent contractors (inclusive of all subcontractors), their agents and servants, whether engaged by or acting for the Carrier or any other person, as well as during the entire time the Carrier is responsible for the Goods. In the absence of compulsorily applicable legislation, COGSA shall apply.
   b) The Carrier shall not be liable in any capacity whatsoever for any delay, non-delivery, mis-delivery or other loss or damage to or in connection with the Goods or Containers or other packages occurring at any time contemplated under subdivision a) of this Clause.
   c) The Carrier shall, irrespective of which law is applicable under subdivision a) of this Clause, be entitled to the benefit of the provisions of Sections 181 through 186 and 188, Title 46, U.S. Code.
   d) The rights, defenses, exemptions, limitations of and exonerations from liability and immunities of whatsoever nature provided for in this Bill of Lading shall apply in any action or proceeding against the Carrier, its agents and servants and/or any Participating carrier or independent contractor.
5. THROUGH TRANSPORTATION.
   When either the Place of Receipt or Place of Delivery set forth herein is an inland point or place other than the Port of Loading or Port of Discharge (Through Transportation basis), the Carrier will procure transportation to or from the sea terminal and such inland point(s) or place(s) and, notwithstanding anything in this Bill of Lading contained, but always subject to Clause 4. hereof, the Carrier shall be liable for loss or damage of whatsoever nature and howsoever arising to the following extent, but no further:
   a) Upon proof that the loss or damage arose during a part of the Carriage herein made subject to COGSA or other compulsorily applicable legislation, as set forth in Clause 4. a) hereof, said legislation shall apply; or
   b) Upon proof that the loss or damage not falling within a) above, but concerning which the law of any country, state or subdivision thereof contains provisions that are compulsorily applicable and would have applied if the Merchant had made a separate and direct contract with the Carrier, a Participating carrier or independent contractor, as referred to in Clause 4. a), relative to a particular stage of transport or other handling wherein the loss or damage occurred and received as evidence thereof a particular receipt or other document, then the liability of the Carrier, Participating carrier and independent contractor shall be subject to the provisions of such law.
   c) If it should be determined that the Carrier bears any responsibility for loss or damage occurring during the care, custody and/or control of any Participating carrier or independent contractor, and be subject to law compulsorily applicable to their bills of lading, receipts, tariffs and/or law applicable thereto, then the Carrier shall be entitled to all rights, defenses, immunities, exemptions, limitations of and exonerations from liability of whatsoever nature accorded under such bill of lading, receipt, tariff and/or applicable law, provided however, that nothing contained herein shall be deemed a surrender by the Carrier of any of its rights, defenses and immunities or an increase of any of its responsibilities or liabilities under this Bill of Lading, the Carrier's applicable tariff or laws applicable or relating to such Carriage.
   d) Except as hereinabove provided, the Carrier shall have no liability for damage to the Goods.
6. SUBCONTRACTING: BENEFICIARIES.
   a) The Carrier shall be entitled to subcontract on any terms the whole or any part of the Carriage, loading, unloading, storing, warehousing, handling and any and all duties whatsoever undertaken by it in relation to the Goods or Containers or other packages or any other goods.
   b) It is understood and agreed that if it should be adjudged that any person or entity other than or in addition to the Carrier is under any responsibility with respect to the Goods or any other goods, regardless of the port or place where any loss or damage shall occur and without regard to whether the Goods covered hereby or any other goods are being handled or are damaged directly or indirectly during any handling, and even if the Goods or other goods are transported on free in, stowed and/or free out terms, all exemptions, limitations of and exonerations from liability provided by law or by the Terms and Conditions hereof shall be available to all agents, servants, employees, representatives, all Participating (including inland and coastal) carriers and all stevedores, terminal operators, warehousemen, crane operators, watchmen, carpenters, ship cleaners, surveyors and all independent contractors whatsoever. In contracting for the foregoing exemptions, limitations of and exonerations from liability, the Carrier is acting as agent and trustee for and on behalf of all persons described above, all of whom shall to this extent be deemed to be a party to the contract evidenced by this Bill of Lading, regardless for whom acting or by whom retained and paid, it being always understood that said beneficiaries are not entitled to any greater or further exemptions, limitations of or exonerations from liability than those that the Carrier has under this Bill of Lading in any given situation.
   c) The Carrier undertakes to procure such services as necessary and shall have the right at its sole discretion to select any mode of land, sea or air transport and to arrange participation by other carriers to accomplish the total or any part of the Carriage from Port of Loading to Port of Discharge or from Place of Receipt to Place of Delivery, or any combination thereof, except as may be otherwise provided herein.
   d) The Merchant agrees that the Carrier shall be deemed to be a beneficiary of the actual ocean carrier's bill of lading and of all exemptions, limitations of and exonerations from liability therein contained even though the Carrier acts as agent of the Merchant in contracting with the actual ocean carrier for the Carriage of the Goods. Notwithstanding, under no circumstances shall the Carrier be responsible for any damages to an extent greater than the actual ocean carrier or any beneficiaries thereof or hereof.
   e) No agent or servant of the Carrier or other person or class named in subdivision b) hereof shall have power to waive or vary any of the Terms and Conditions hereof unless such waiver or variation is in writing and is specifically authorized or ratified in writing by an officer or director of the Carrier having actual authority to bind the Carrier to such waiver or variation.
7. MERCHANT'S RESPONSIBILITY/
DESCRIPTION OF GOODS.
   a) The description and particulars of the Goods set out on the face hereof or any description, particular or other representation appearing on the Goods or documents relating thereto are furnished by the Merchant and the Merchant warrants to the Carrier that the description, particulars and any representation made including, but not limited to, weight, content, measure, quantity, quality, condition, marks, numbers and value are correct.
   b) The Merchant warrants that it has complied with all applicable laws, regulations and requirements of Customs, Port and other Authorities and shall bear and pay all duties, taxes, fines, imposts, expenses and losses incurred or suffered by reason thereof or by reason of any illegal, incorrect or insufficient marking, numbering, addressing or any other particular relative to the Goods.
   c) The Merchant further warrants that the Goods are packed in a manner adequate to withstand the ordinary risks of Carriage having regard to their nature and in compliance with all laws, regulations and requirements which may be applicable.
   d) No Goods which are or may become dangerous, inflammable or damaging or which are or may become liable to damage any property or person whatsoever shall be tendered to the Carrier for Carriage without the Carrier's prior express consent in writing and without the Container or other covering in which the Goods are to be transported being distinctly marked on the outside thereof so as to indicate the nature and character of any such articles and so as to comply with all applicable laws, regulations and requirements. If any such articles are delivered to the Carrier without such written consent and marking or if in the opinion of the Carrier the articles are or are liable to become of a dangerous, inflammable or damaging nature, the same may at any time be destroyed, disposed of, abandoned or rendered harmless without compensation to the Merchant and without prejudice to the Carrier's right to Charges.
   e) The Merchant shall be liable for all loss or damage of any kind whatsoever, including but not limited to contamination, soiling, detention and demurrage before, during and after the Carriage of property (including but not limited to Containers) of the Carrier or any person or vessel (other than the Merchant) caused by the Merchant or any person acting on its behalf or for which the Merchant is otherwise responsible.
   f) The Merchant and the Goods themselves shall be liable for and shall indemnify the Carrier, and the Carrier shall have a lien on the Goods for all expenses of mending, repairing, fumigating, repacking, coopering, baling, reconditioning of the Goods and gathering of loose contents, also for expenses for repairing Containers damaged while in the possession of the Merchant, for demurrage on Containers and any payment, expense, fine, dues, duty tax, import, loss, damage or detention sustained or incurred by or levied upon the Carrier, Vessel or any action or requirement of any government or governmental authority or person purporting to act under the authority thereof, seizure under legal process or attempted seizure, incorrect or insufficient marking, numbering or addressing of Containers or other packages or description of the contents, failure of the Merchant to procure consular, Board of Health or other certificates to accompany the Goods or to comply with laws or regulations of any kind imposed with respect to the Goods by the authorities at any port or place or any act or omission of the Merchant. The Carrier's lien shall survive delivery and may be enforced by private or public sale and without notice.
   g) The Merchant shall defend, indemnify and hold harmless the Carrier, any Participating carrier, independent contractor, their agents and servants, against any loss, damage, claim, liability or expense whatsoever arising from any breach of the provisions of

(1)

this Clause 7. or from any cause in connection with the Goods for which the Carrier is not responsible.

## 8. CONTAINERS.

a) Goods may be stowed by the Carrier in or on Containers, and may be stowed with other goods. Containers, whether stowed by the Carrier or received fully stowed, may be carried on or under deck without notice, and the Merchant expressly agrees that cargo stowed in a Container and carried on deck is considered for all legal purposes to be cargo stowed under deck. Goods stowed in Containers on deck shall be subject to the legislation referred to in Clause 4. hereof and will contribute in General Average and receive compensation in General Average, as the case may be.

b) The Terms and Conditions of this Bill of Lading shall govern the responsibility of the Carrier with respect to the supply of a container to the Merchant.

c) If a Container has been stuffed by or on behalf of the Merchant, the Carrier, any Participating Carrier, all independent contractors and all persons rendering any service whatsoever hereunder shall not be liable for any loss or damage to the Goods, Containers or other packages or to any other goods caused (1) by the manner in which the Container has been stuffed and its contents secured, (2) by the unsuitability of the Goods for carriage in Containers or for the type of Container requested by and furnished to the Merchant, or (3) condition of the Container furnished, which the Merchant acknowledges has been inspected by it or on its behalf before stuffing and sealing.

d) The Merchant shall defend, indemnify and hold harmless the Carrier, any Participating carrier, independent contractor, their agents and servants, against any loss, damage, claim, liability or expense whatsoever arising from one or more of the matters covered by a), b) and/or c) above.

## 9. CONTAINERS WITH HEATING OR REEFER APPARATUS.

Containers with temperature or atmosphere control apparatus for heating, refrigeration, ventilation or otherwise will not be furnished unless contracted for expressly in writing at time of booking and, when furnished, may entail increased Charges. In the absence of an express request, it shall be conclusively presumed that the use of a dry container is appropriate for the Goods.

Merchant must provide Carrier with desired temperature range in writing at time of booking and insert same on the face side of the Bill of Lading and, where so provided, Carrier is to exercise due diligence to maintain the temperature within a reasonable range while the Containers are in its care, custody and/or control or that of any Participating carrier or independent contractor. The Carrier does not accept any responsibility for the functioning of temperature or atmosphere-controlled Containers not owned or leased by Carrier or for latent defects not discoverable by the exercise of due diligence.

Where the Container is stuffed or partially stuffed by or on behalf of the Merchant, the Merchant warrants that it has properly pre-cooled or pre-heated the Container, that the Goods have been properly stuffed and secured within the Container and that the temperature controls have been properly set prior to delivery of the Container to the Carrier, or any Participating carrier or independent contractor, their agents and servants. The Merchant accepts responsibility for all damage or loss of whatsoever nature resulting from a breach of any of these warranties, including but not limited to other cargo consolidated in the Container with the Merchant's Goods or to any other cargo, property or person damaged or injured as a result thereof, and the Merchant agrees to defend, indemnify and hold the Carrier, Participating carriers and independent contractors, their agents and servants, harmless from and against all claims, suits, proceedings and all other consequences thereof regardless of their nature and merit.

## 10. OPTION OF INSPECTION.

The Carrier and any Participating carrier shall be entitled, but under no obligation, to open any Container at any time and to inspect the contents. If it thereupon appears that the contents or any part thereof cannot safely or properly be carried or carried further, either at all or without incurring any additional expense, the Carrier and Participating carrier may abandon the transportation thereof and/or take any measures and/or incur any reasonable additional expenses to continue the Carriage or to store the Goods, which storage shall be deemed to constitute due delivery under this Bill of Lading. The Merchant shall indemnify the Carrier, any Participating carrier, independent contractor, their agents and servants, against any reasonable additional Charges so incurred.

## 11. DECK CARGO.

Deck cargo (except that carried in Containers on deck) and live animals are received and carried solely at Merchant's risk (including accident or mortality of animals), and the Carrier will not in any event be liable for any loss or damage for or from which he is exempt, immune or exonerated by applicable law, or from any other cause whatsoever not due to the fault of the Carrier, any warranty of seaworthiness in the premises being hereby waived, and the burden of proving liability being in all respects upon the Merchant. Except as may be otherwise provided, such shipments shall be deemed Goods and shall be subject to all Terms and Conditions of this Bill of Lading.

## 12. METHODS AND ROUTES OF TRANSPORTATION.

With respect to the Goods or Containers or other packages, the Carrier may at any time and without notice to the Merchant:

a) use any means of transport (water, land and/or air) or storage whatsoever;

b) forward, transship or retain on board or carry on another vessel or conveyance or by any other means of transport than that named on the reverse side hereof;

c) carry Goods on or under deck at its option;   d) proceed by any route in its sole and absolute discretion and whether the nearest, most direct, customary or advertised route or in or out of geographical rotation;

e) proceed to or stay at any place whatsoever once or more often and in any order or omit calling at any port, whether scheduled or not;

f) store, vanned or devanned, at any place whatsoever, ashore or afloat, in the open or covered;

g) proceed with or without pilots;

h) carry livestock, contraband, explosives, munitions, warlike stores, dangerous or hazardous Goods or Goods of any and all kinds;

i) drydock or stop at any unscheduled or unadvertised port for bunkers, repairs or for any purpose whatsoever;

j) discharge and require the Merchant to take delivery, vanned or devanned;

k) comply with any orders, directions or recommendations given by any government or authority or by any person or body acting or purporting to act with the authority of any government or authority or having under the terms of the insurance on the Vessel or other conveyance employed by the Carrier the right to give such orders, directions or recommendations.

l) take any other steps or precautions as may appear reasonable to the Carrier under the circumstances.

The liberties set out in subdivisions a) through l) may be invoked for any purpose whatsoever even if not connected with the Carriage covered by this Bill of Lading, and any action taken or omitted to be taken, and any delay arising therefrom, shall be deemed to be within the contractual and contemplated Carriage and not be an unreasonable deviation.

In no circumstance whatsoever shall the Carrier be liable for direct, indirect or consequential loss or damage caused by delay.

## 13. MATTERS AFFECTING PERFORMANCE.

In any situation whatsoever and wheresoever occurring and whether existing or anticipated before commencement of, during or after the Carriage, which in the judgment of the Carrier is likely to give rise to any hindrance, risk, capture, seizure, detention, damage, delay, difficulty or disadvantage or loss to the Carrier or any part of the Goods, or make it unsafe, imprudent, impracticable or unlawful for any reason to receive, keep, load, carry or discharge them or any part of them or commence or continue the Carriage or disembark passengers at the Port of Discharge or of the usual or intended place of discharge or delivery, or to give rise to danger, delay or difficulty of whatsoever nature in proceeding by the usual or intended route, the Carrier and any Participating carrier, independent contractor, their agents and servants, without notice to the Merchant, may decline to receive, keep, load, carry or discharge the Goods, or may discharge the Goods and may require the Merchant to take delivery and, upon failure to do so, may warehouse them at the risk and expense of the Merchant and Goods or may forward or transship them as provided in this Bill of Lading, or the Carrier may retain the Goods on board until the return of the Vessel to the Port of Loading or to the Port of Discharge or any other point or until such time as the Carrier deems advisable and thereafter discharge them at any place whatsoever. In such event, as herein provided, such shall be at the risk and expense of the Merchant and Goods, and such action shall constitute complete delivery and performance under this contract, and the Carrier shall be free from any further responsibility. For any service rendered as herein above provided or for any delay or expense to the Vessel or Carrier caused as a result thereof, the Carrier shall, in addition to full Charges, be entitled to reasonable extra compensation, and shall have a lien on the Goods for same. Notice of disposition of the Goods shall be sent to the Merchant named in this Bill of Lading within a reasonable time thereafter.

All actions taken by the Carrier hereunder shall be deemed to be within the contractual and contemplated Carriage and not be an unreasonable deviation.

## 14. DELIVERY.

If delivery of the Goods or Containers or other packages or any part thereof is not taken by the Merchant when and where and at such time and place as the Carrier is entitled to have the Merchant take delivery, whether or not the Goods are damaged, they shall be considered to have been delivered to the Merchant, and the Carrier may, at its option, subject to its lien and without notice, elect to have same remain where they are or, if containerized, devanned and sent to a warehouse or other place, always at the risk and expense of the Merchant and Goods.

If the Goods are stowed within a Container owned or leased by the Carrier, the Carrier shall be entitled to devan the contents of any such Container, whereupon the Goods shall be considered to have been delivered to the Merchant, and the Carrier may, at its option, subject to its lien and without notice, elect to have same remain where they are or sent to a warehouse or other place, always at the risk and expense of the Merchant and Goods.

At ports or places where by local law, authorities or custom, the Carrier is required to discharge cargo to lighters or other craft or where it has been so agreed or where wharves are not available which the Vessel can get to, be at, lie at, or leave, always safely afloat, or where conditions prevailing at the time render discharge at a wharf dangerous, imprudent or likely to delay the Vessel, the Merchant shall promptly furnish lighters or other craft to take delivery alongside the Vessel at the risk and expense of the Merchant and the Goods. If the Merchant fails to provide such lighters or other craft, Carrier, acting solely as agent for the Merchant, may engage such lighters or other craft at the risk and expense of the Merchant and the Goods. Discharge of the Goods into such lighters or other craft shall constitute proper delivery, and any further responsibility of Carrier with respect to the Goods shall thereupon terminate.

## 15. CHARGES, INCLUDING FREIGHT.

The Charges payable hereunder have been calculated on the basis of particulars furnished by or on behalf of the Merchant. The Carrier shall, at any time, be entitled to inspect, reweigh, remeasure or revalue the contents and, if any of the particulars furnished by the Merchant are found to be incorrect, the Charges shall be adjusted accordingly, and the Merchant shall be responsible to pay the correct Charges and all expenses incurred by the Carrier in checking said particulars or any of them.

Charges shall be deemed earned on acceptance of the Goods or Containers or other packages for shipment by or on behalf of the Carrier and shall be paid by the Merchant in full, without any offset, counterclaim or deduction, cargo and/or vessel or other conveyance lost or not lost, and shall be non-returnable in any event.

The Merchant shall remain responsible for all Charges, regardless whether the Bill of Lading states, in words or symbols, that it is "Prepaid," "To be Prepaid" or "Collect."

In arranging for any services with respect to the Goods, the Carrier shall be considered the exclusive agent of the Merchant for all purposes, and any payment of Charges to other than the Carrier shall not, in any event, be considered payment to the Carrier.

The Merchant shall defend, indemnify and hold the Carrier, any Participating carrier, independent contractor, their agents and servants, harmless from and against all liability, loss, damage and expense which may be sustained or incurred relative to the above.

## 16. CARRIER'S LIEN.

The Carrier shall have a lien on the Goods, inclusive of any Container owned or leased by the Merchant, as well as on any Charges due any other person, and any documents relating thereto, which lien shall survive delivery, for all sums due under this contract or any other contract or undertaking to which the Merchant was party or otherwise involved, including, but not limited to, General Average contributions, salvage and the cost of recovering such sums, inclusive of attorney's fees. Such lien may be enforced by the Carrier by public or private sale at the expense of and without notice to the Merchant.

The Merchant agrees to defend, indemnify and hold the Carrier, any Participating carrier, independent contractor, their agents and servants, harmless from and against all liability, loss, damage or expense which may be sustained or incurred by the Carrier relative to the above and the Merchant agrees to submit to the jurisdiction of any court, tribunal or other body before whom the Carrier may be brought, whether said proceeding is of a civil or criminal nature.

## 17. BULK CARGO.

The weight or quantity of any bulk cargo inserted in this Bill of Lading is the weight or quantity as ascertained by a third party other than the Carrier, and Carrier makes no representation with regard to the accuracy thereof. This Bill of Lading shall not be deemed evidence against the Carrier of receipt of bulk cargo of the weight or quantity so inserted in the Bill of Lading.

## 18. GOLD, SILVER, ETC.

Gold, silver, specie, bullion or other valuables, including those named or described in Sec. 4281 of the Revised Statutes of the United States, will not be received by the Carrier unless their true character and value are disclosed to the Carrier and a special written agreement therefor has been made in advance, and will not, in any case, be loaded or landed by the Carrier. No such valuables shall be considered received by or delivered to the Carrier until brought aboard the ship by the shipper and put in the actual possession of, and a written receipt therefor is given by, the Master or other officer in charge. Such valuables will only be delivered by the Carrier aboard the ship on presentation of proper documentation and upon such delivery the Carrier's responsibility shall cease. If delivery is not so taken promptly after the ship's arrival at Port of Discharge, said valuables may be retained aboard or landed or carried on, solely at the risk and expense of the valuables and Merchant.

## 19. RUST.

It is agreed that superficial rust, oxidation or any like condition due to moisture, is not a condition of damage but is inherent to the nature of the Goods. Acknowledgement of receipt of the Goods in apparent good order and condition is not a representation that such conditions of rust, oxidation or the like did not exist on

(2)

receipt.

20. GENERAL AVERAGE.

a) If General Average is declared, it shall be adjusted according to the York/Antwerp Rules of 1994 and all subsequent amendments thereto from time to time made, at any place at the option of any person entitled to declare General Average, and the Amended Jason Clause as approved by BIMCO is to be considered as incorporated herein, and the Merchant shall provide such security as may be required in this connection.

b) Notwithstanding a) above, the Merchant shall defend, indemnify and hold harmless the Carrier and any Participating carrier, their agents and servants, in respect of any claim (and any expense arising therefrom) of a General Average nature which may be made against the Carrier and/or any Participating carrier and shall provide such security as may be required in this connection.

c) Neither the Carrier nor any Participating carrier shall be under any obligation to take any steps whatsoever to collect security for General Average contributions due to the Merchant.

21. LIMITATION OF LIABILITY.

Except as otherwise provided in this Clause or elsewhere in this Bill of Lading, in case of any loss or damage to or in connection with cargo exceeding in actual value the equivalent of $500 lawful money of the Unites States, per package, or in case of cargo not shipped in packages, per shipping unit, the value of the cargo shall be deemed to be $500 per package or per shipping unit. The Carrier's liability, if any, shall be determined on the basis of a value of $500 per package or per shipping unit or pro rata in case of partial loss or damage, unless the nature of the cargo and valuation higher than $500 per package or per shipping unit shall have been declared by the Merchant before shipment and inserted in this Bill of Lading, and extra freight paid if required. In such case, if the actual value of the cargo per package or per shipping unit shall exceed such declared value, the value shall nevertheless be deemed to be declared value and the Carrier's liability, if any, shall not exceed the declared value.

The words "shipping unit" shall mean each physical unit or piece of cargo not shipped in a package, including articles or things of any description whatsoever, except cargo shipped in bulk, and irrespective of the weight or measurement unit employed in calculating freight and related charges.

As to cargo shipped in bulk, the limitation applicable thereto shall be the limitation provided in Section 1304(5) of COGSA, or such other legislation, convention or law as may be compulsorily applicable, and in no event shall anything herein be construed as a waiver of limitation as to cargo shipped in bulk.

Where a Container is not stuffed by or on behalf of the Carrier or the parties characterize the Container as a package or a lump sum freight is assessed, in any of these events, each individual such Container, including in each instance its contents, shall be deemed a single package and Carrier's liability limited to $500 with respect to each such package, except as otherwise provided in this Clause or elsewhere in this Bill of Lading with respect to each such package. In the event this provision should be held invalid during that period in which compulsory legislation shall apply of its own force and effect, such as during the tackle-to-tackle period, it shall nevertheless apply during all non-compulsory periods such as, but not limited to, all periods prior to loading and subsequent to discharge from the Vessel for which the Carrier remains responsible.

Where compulsorily applicable legislation provides a limitation less than $500 per package or shipping unit, such lesser limitation shall apply and nothing herein contained shall be construed as a waiver of a limitation less than $500.

Further, where a lesser monetary limitation is applicable, such as during handling by a Participating carrier or independent contractor and damage occurs during its or their period of care, custody, control and/or responsibility, the Carrier shall be entitled to avail itself of such lesser limitation.

22. NOTICE OF CLAIM: TIME FOR SUIT.

As to any loss or damage presumed to have occurred during the Carrier's period of responsibility, the Carrier must be notified in writing of any such loss or damage or claim before or at the time of discharge/removal of the Goods by the Merchant or, if the loss or damage is not then apparent, within 3 consecutive days after discharge/delivery or the date when the Goods should have been discharged/delivered. If not so notified, discharge, removal or delivery, depending upon the law applicable, shall be prima facie evidence of discharge/delivery in good order by the Carrier of such Goods.

In any event, the Carrier shall be discharged from all liability of whatsoever nature unless suit is brought within 1 year after delivery of the Goods or the date when the Goods should have been delivered, provided however, that if any claim should arise during a part of the transport which is subject by applicable law and/or tariff and/or contract to a shorter period for notice of claim or commencement of suit, any liability whatsoever of the Carrier shall cease unless proper claim is made in writing and suit is brought within such shorter period.

Suit shall not be deemed "brought" unless jurisdiction shall have been obtained over the Carrier by service of process or by an agreement to appear. In the event this provision should be held invalid during that period in which compulsory legislation shall apply of its own force and effect, such as during the tackle-to-tackle period, it shall nevertheless apply during all non-compulsory periods during which the Carrier remains responsible for the Goods.

23. LAW AND JURISDICTION.

a) Governing Law shall be in accordance with Clause 4. hereof.

b) Jurisdiction

All disputes in any way relating to this Bill of Lading shall be determined by the United States District Court for the Southern District of New York to the exclusion of the jurisdiction of any other courts in the United States or the courts of any other country PROVIDED ALWAYS that the Carrier may in its absolute and sole discretion invoke or voluntarily submit to the jurisdiction of any other court which, but for the terms of this Bill of Lading, could properly assume jurisdiction to hear and determine such disputes, but such shall not constitute a waiver of the terms of this provision in any other instance.

24. NON-WAIVER AND SEPARABILITY.

Nothing in this Bill of Lading shall operate to deprive the Carrier of any statutory protection or any defense, immunity, exemption, limitation of or exoneration from liability contained in the laws of the United States, or of any other country whose laws may be applicable. The Terms and Conditions of this Bill of Lading (including all the terms and conditions of the carrier's applicable tariff or tariffs, incorporated herein by virtue of Clause 2 above) shall be separable, and if any part or term hereof shall be held invalid, such holding shall not affect the validity or enforceability of any other part or term hereof.